JOHN C. TROLAN, Appellant, *v.* LEROY S. ROGERS, Respondent.

*Will — suspension of the power of alienation of real estate — the husband of a woman owning an estate in remainder is entitled to an estate by the curtesy.*

A decedent's will provided, among other things, as follows :

"I also hereby give, bequeath and devise the use and enjoyment of the rest, residue and remainder of my real estate and personal estate of every name, kind and description whatsoever to my said wife Hannah, to have, possess, hold and enjoy the same during her natural life, and after her decease to go and to be divided equally between my son Julius and my daughter Julia, to have, possess and enjoy the same during their and each of their natural lives, and after their decease to their children and heirs at law in fee simple ; but if my son Julius or my daughter Julia should die before the decease of my said wife, then and in that case, their children and heirs at law to take and hold what their parent if living would be entitled to under this my will."

*Held,* that the intention of the testator was to give to his widow a life estate in his property, and that upon her death it should go to his son and daughter, who should each have the use of one-half thereof during life, and that upon the close of the life of the testator's son his half should go to his children, and upon the close of the life of the testator's daughter her half should go to her children ;

That there was no unlawful suspension of the power of alienation of the real estate, as each one of the shares was separately disposed of, and, therefore, the provision in question was to be considered as if a disposition had been made of the estate in an entirety.

When a married woman is entitled to an estate in fee in remainder in certain real estate after the termination of two life estates therein, and such two life estates terminate during her coverture, she obtains an absolute estate in such premises during her life, and upon her death intestate her husband is entitled to an estate by the curtesy therein.

APPEAL by the plaintiff, John C. Trolan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 28th day of March, 1893, upon the verdict of a jury rendered by direction of the court, after a trial at the Jefferson Circuit, dismissing the plaintiff's complaint upon the merits, with notice of an intention to bring up for review on such appeal an order entered in said clerk's office on the 13th day of March, 1893, denying the plaintiff's motion for a new trial.

*John C. Trolan*, in person, and *Henry Purcell*, for the appellant.

*Watson M. Rogers*, for the respondent.

HARDIN, P. J.:

William Gill on the 2d of January, 1857, died testate, leaving his widow Hannah, his daughter Julia, and his son Julius him surviving. He left a will containing the following clause, viz.: "I also hereby give, bequeath and devise the use and enjoyment of the rest, residue and remainder of my real estate and personal estate of every name, kind and description whatsoever to my said wife Hannah, to have, possess, hold and enjoy the same during her natural life, and after her decease to go and to be divided equally between my son Julius and my daughter Julia, to have, possess and enjoy the same during their and each of their natural lives, and after their decease to their children and heirs at law in fee simple; but if my son Julius or my daughter Julia should die before the decease of my said wife, then and in that case, their children and heirs at law to take and hold what their parent if living would be entitled to under this my will." His will was duly admitted to probate by the surrogate of Jefferson county. He was the owner in fee of the lands mentioned in the complaint.

Subsequent to the probate of the will, and on the 23d of May, 1857, the widow and the two children executed quit-claim deeds to effectuate a division or partition of the testator's real property. Of the lands covered by the deed executed by the widow and son to the daughter Julia, she conveyed April 8, 1875, the lands mentioned in the complaint to the defendant, in consideration of $700, which deed was put on record, and defendant entered into possession of the lands so conveyed to him. Subsequently, on May 21, 1881, the daughter Julia died intestate, leaving her surviving four children, and Ada E., one of them, was married May 20, 1875, to the plaintiff, and she died February 2, 1884, leaving her surviving two children, the issue of such marriage, to the plaintiff. The plaintiff claims that his wife Ada, upon the death of her mother, was entitled to one-fourth of the property which was set off to the mother under the will of William Gill, deceased. We think the intention of the testator was to give to his widow a life estate in his property, and that upon her death it was his intention that his son and daughter should each have the use of one-half thereof during life. The words found in the will, viz.: "To go and to be divided equally between my son Julius and my daughter Julia, to have, possess and enjoy the same during their and each of their natural lives," seem appropriate to evince an intention that there should be a division between Julius and Julia of the estate, and that each should have the use during life of one-half of the estate, and that upon the close of the life of the son his half should go to his children, and that upon the close of Julia's life her half should pass in fee to her children. The will provides in effect that the widow shall enjoy the use of the estate during her natural life, and that thereafter the son shall have the use of one-half for his life and the daughter one-half for and during her natural life. We think there was no unlawful suspension of the title to the real estate. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Moore* v. *Hegeman*, 72 id. 377; *Monarque* v. *Monarque*, 80 id. 320; *Wells* v. *Wells*, 88 id. 323; *Matter of Blaker*, 12 N. Y. St. Repr. 741.) "Each one of these shares is separately disposed of, and, therefore, the provision in question is to be considered as if a disposition had been made of an estate in an entirety." The whole estate is bound during the life of the widow, and after her death each of the testator's children takes in severalty

one-half of the estate for life, and the fee having vested in the grandchildren at testator's death the possession of such half passes at the close of the lives of the life tenants to the children of the son or daughter so that they take "what their parent, if living, would be entitled to." (*Schermerhorn* v. *Cotting*, 131 N. Y. 55.) The testator expressly provides that his son and daughter shall have the use during his or her natural life of the one-half, and that thereafter the children and heirs at law shall take "in fee simple." The daughter Julia, having only a life estate by the terms of the will, could convey that and no more to the defendant. At the close of her life her children became entitled to the possession of the one-half of the testator's estate of which she was given the use for life. As her death took place during the coverture of the daughter Ada she was entitled to immediate possession of an undivided interest in the estate of the testator, and that right accrued to her during coverture. By the death of Hannah, the testator's widow, on October 20, 1875, her life estate terminated. Inasmuch as both life tenants died during coverture of plaintiff's wife the daughter Ada had an absolute estate during her lifetime. Her seizure was perfect at the close of her mother's life, which occurred in 1881. (1 Washb. on Real Prop. 160, § 28; *Dunham* v. *Osborn*, 1 Paige, 634; *Matter of Creyier*, 1 Barb. Ch. 598; *Tayloe* v. *Gould*, 10 Barb. 401; *Durando* v. *Durando*, 23 N. Y. 331; *Ferguson* v. *Tweedy*, 43 id. 543; *Hurd* v. *Cass*, 9 Barb. 367; *Clark* v. *Clark*, 24 id. 581; *Hatfield* v. *Sneden*, 54 N. Y. 280.) The possession of the defendant under his deed taken April 8, 1875, has not been such as to ripen into a title, and the case does not fall within the rule laid down in *Baker* v. *Oakwood* (49 Hun, 416; 3 N. Y. Supp. 570).

When the trial was near its close it seems the letter of plaintiff to defendant had not been produced and read to the court, though it was assumed that such letter had been sent before suit brought (and it now appears in the case), and the plaintiff requested the court to hold "if it appears from the letter referred to that a sufficient demand was made of the defendant for possession prior to the commencement of the action plaintiff is entitled to maintain the suit as a tenant in common after an ouster or eviction, defendant claiming to hold adversely to plaintiff, his co-tenant." This request was overruled and an exception taken. The complaint was amended so that

it averred a demand by the plaintiff of possession of the premises before commencement of the action and a refusal by the plaintiff. When the ruling was made it appeared that the defendant had by his answer denied the plaintiff's title and claimed to be in possession adversely to the plaintiff's title or interest, claiming to hold the premises as his own, and that the defendant wholly denied the title and right of the plaintiff. His acts and declarations "are inconsistent with the supposition that he acquired and now holds possession of the premises as tenant in common with the plaintiff." (*Edwards* v. *Bishop*, 4 N. Y. 65; *Valentine* v. *Northrop*, 12 Wend. 495; Code Civ. Proc. §§ 1500, 1515; *Earnshaw* v. *Myers*, 17 N. Y. St. Repr. 703.) The views already stated lead us to order a new trial.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.